UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH FETCHICK, III,

      Plaintiff,

v.                                     Case No: 6:15-cv-96-Orl-28TBS

DONALD F. ESLINGER, as Sheriff of
Seminole County, Florida,

      Defendant.

## ORDER

James Fetchick, III, a former deputy sheriff, brings this action against Donald F. Eslinger, as Sheriff of Seminole County, Florida, alleging that his rights under the U.S. Constitution were violated when his employment was terminated. He also alleges a violation of Florida's Law Enforcement Officers' and Correctional Officers' Bill of Rights.[1] Now before the Court is Defendant's Motion to Dismiss (Doc. 9), Plaintiff's Response (Doc. 17), and Defendant's Reply[2] (Doc. 22). As set forth below, the motion is granted but Plaintiff will be granted leave to replead his claims.

I.      **Background**[3]

Plaintiff was hired by Defendant in May 2008 for the position of Sheriff Deputy and

---

[1] § 112.532, Fla. Stat.

[2] Defendant's Reply was filed with permission of the Court. (See Docs. 19 & 20; see also M.D. Fla. Local Rule 3.01(c) (providing that "[n]o party shall file any reply or further memorandum directed to the motion or response . . . unless the Court grants leave")).

[3] The facts in the Background section are taken from the Amended Complaint and are accepted as true at this stage of the case.

was assigned to Milwee Middle School in Longwood, Florida, as a School Resource Deputy. (Am. Compl., Doc. 7, ¶¶ 10-11). In approximately May 2013, Plaintiff separated from his wife. (Id. ¶ 14). Plaintiff vacated the marital home and "purchased, with his own funds, a Verizon cellular telephone account, in part, so [his wife] would not have access to his communications." (Id. ¶ 15).

In approximately September 2013, Plaintiff "developed a romantic relationship with Valencia LaRue, a Sergeant, previously employed with the Defendant."[4] (Id. ¶ 16). Plaintiff communicated with LaRue using his private Verizon cellular telephone and "refrained [from] sending non-work related communications with his work-assigned cellular telephone." (Id. ¶ 17). Plaintiff's wife intentionally and without Plaintiff's consent logged into Plaintiff's private Apple iCloud account associated with his Verizon cellular telephone and "illegally intercepted on her iPad the private text messages between" Plaintiff and LaRue. (Id. ¶¶ 18-19).

In December 2013, Plaintiff's wife filed a complaint with the Professional Standards Division ("PSD") at Defendant's office, alleging that Plaintiff and LaRue were having a romantic relationship. (Id. ¶ 20). Plaintiff's wife notified the PSD that she was in possession of sexually explicit text messages on her iPad between Plaintiff and LaRue, and she provided to the PSD her iPad containing the messages. (Id. ¶¶ 21-22). Defendant then "commenced an internal affairs investigation of Plaintiff" and placed him on administrative suspension pending the outcome of that investigation. (Id. ¶ 23).

---

[4] It is unclear from the Amended Complaint whether LaRue was employed by Defendant at the time of the events at issue or whether her employment had ended prior to these events. The timing of the cessation of her employment has no bearing on the issues now before the Court.

The Internal Affairs Report of Defendant stated that the communications between Plaintiff and LaRue violated Defendant's General Orders because the 6,000 text messages exchanged between them constituted neglect of duty. (Id. ¶ 24). Plaintiff alleges that Defendant "failed to provide [Plaintiff] with evidence substantiating [the] allegations." (Id. ¶ 25). Additionally, Plaintiff claims that in the investigation report Defendant "falsely alleged [that] Plaintiff . . . left his assigned post at Milwee Middle School multiple times to visit [LaRue] for sexual relations." (Id. ¶ 26). Defendant "failed to provide Plaintiff . . . with any witness statements accusing him of leaving his post to visit [LaRue]." (Id. ¶ 27). "To the contrary,"[5] Plaintiff "always informed the principal or dean of students for Milwee Middle School prior to leaving campus." (Id. ¶ 28).

On March 24, 2014, Defendant furnished Plaintiff with a Notice of Proposed Discipline that proposed termination of Plaintiff. (Id. ¶ 29). The next day, Plaintiff retained an attorney to represent him in the administrative appeals process, and on that day counsel faxed to Defendant's office a Request for Pre-Disciplinary Meeting advising that Plaintiff was represented by counsel and asking that he not be contacted except through his attorney. (Id. ¶¶ 30-31). Despite that request, on or about April 11, 2014, Defendant's office contacted Plaintiff directly and demanded that he meet with Defendant. (Id. ¶ 32).

A meeting was held on April 11, during which Plaintiff was interrogated regarding his employment with Defendant. (Id. ¶ 34). Plaintiff requested that his attorney be present for that meeting. (Id. ¶ 33). General counsel for the Seminole County Sheriff's Office was

---

[5] The Amended Complaint intimates that the fact that Plaintiff "always informed the principal or dean of students for Milwee Middle School prior to leaving campus" is "contrary" to Defendant's assertion that Plaintiff "left his assigned post at Milwee Middle School multiple times to visit Valencia LaRue for sexual relations." (See Am. Compl. ¶¶ 26 & 28). The Court discerns no inherent inconsistency in these two assertions.

3

present during the interrogation.[6] (Id. ¶ 34). On April 18, 2014, Defendant furnished Plaintiff with a Notice of Final Discipline, terminating Plaintiff. (Id. ¶ 35). That same day, Plaintiff's counsel requested, in writing, a copy of the audiotape recording of the April 11 interrogation, as provided for in section 112.532(1)(g), Florida Statutes. (Id. ¶ 36). The general counsel did not respond to that written request. (Id.).

On April 21, 2014, Plaintiff requested an appeal of the termination decision to Defendant's Civil Service Board ("the Board") pursuant to the Seminole County Sheriff's Office Civil Service Laws. (Id. ¶ 37). On May 6, 2014, Plaintiff's counsel sent a second written request for a copy of the audiotape recording of Plaintiff's interrogation, but general counsel failed to respond to that request. (Id. ¶ 38).

On August 25, 2014, Plaintiff participated in an Appeal Termination Hearing in front of the Board. (Id. ¶ 39). The Board "was entirely comprised of . . . employees of [Defendant] except the Chairman, . . . Mr. Ben Newman." (Id. ¶ 40). "Throughout the hearing, Mr. Newman was wearing a Seminole County Sheriff's Office lapel pin." (Id.). Two other members of the Board "were present in uniform" at the appeal termination hearing, and Defendant—the supervisor of four of the five Board members—"was present for the duration of the appeal termination hearing and decision determination discussions." (Id. ¶¶ 41-42).

After evidence was presented at the hearing, the Board upheld Defendant's decision to terminate Plaintiff. (Id. ¶ 43). After the hearing, at least one Board member "indicated

---

[6] Plaintiff does not allege in this recitation of facts that his attorney did not attend the April 11 meeting, but he later alleges in Count IV of the Amended Complaint that Defendant refused to allow Plaintiff to have his counsel present at the April 11 meeting. (See Am. Compl. ¶ 71).

4

to [Plaintiff that] the member's current employment with the Defendant . . . weighed on his decision at the appeal termination hearing." (Id. ¶ 44).

Plaintiff filed this lawsuit on January 23, 2015, (Compl., Doc. 1), and filed an Amended Complaint on January 30, 2015, (Am. Compl., Doc. 7). In the Amended Complaint, Plaintiff sets forth four claims: Violation of Constitutional Right to Freedom of Association (Count I); Violation of Fourteenth Amendment Right to Procedural Due Process (Count II); Deprivation of Property Interest in Public Employment (Count III); and Violation of Law Enforcement Officers' and Correctional Officers' [Bill of] Rights (Count IV). In the motion to dismiss that is now before the Court, Defendant seeks dismissal of the Amended Complaint in its entirety.

## II.  Legal Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Discussion

#### A. "Failure to invoke 42 U.S.C. § 1983"

Before turning to the counts of Plaintiff's Amended Complaint individually, the Court will address Defendant's argument that Counts I, II, and III should be dismissed "because Plaintiff has failed to invoke 42 U.S.C. § 1983," which "is the exclusive vehicle for vindicating Federal rights conferred by the Constitution or other [sic] Federal statutes." (Doc. 9 at 7). This argument is without merit.

As the Supreme Court clarified last year, plaintiffs are not required "to invoke 42 U.S.C. § 1983 in their complaint." Johnson v. City of Shelby, 135 S. Ct. 346, 346 (2014). In Johnson, the Court reversed the Fifth Circuit's affirmance of a district court's dismissal—based on "failure to invoke 42 U.S.C. § 1983"—of a complaint alleging due process violations under the Fourteenth Amendment. The Court noted that federal pleading rules require "'a short and plain statement of the claim showing that the pleader is entitled to relief'" but "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Id. (quoting Fed. R. Civ. P. 8(a)(2)). The Court made clear that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." Id. at 347.

Thus, Defendant's contention that Plaintiff was required to invoke § 1983 to state viable constitutional claims is without merit. And, in any event, Plaintiff did state—in the "Jurisdiction" section of the Amended Complaint rather than in the individual counts—that "[t]his case arises under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. Sections 1983 and 1988, and Section 112.532, Florida Statutes." (Am. Compl. ¶ 3). Dismissal of Plaintiff's claims is not warranted on this basis.

### B. Count I—Freedom of Association

Plaintiff alleges in his first claim that Defendant's termination of him violated his right to freedom of association under the First Amendment of the U.S. Constitution. Plaintiff contends that he has a protected right "in regards to whom [he] may freely associate and assemble with" and that his "participation in private group text message conversations on his personal cellular phone constitutes association protected by the First Amendment." (Am. Compl. ¶¶ 48-49). Plaintiff further alleges that his "participation in private text messages with Valencia LaRue was protected association" and that his "right to freedom of association outweighed any interest of the Defendant . . . in suppressing his constitutionally protected right to freedom of association." (Id. ¶¶ 50-51). Plaintiff asserts that Defendant violated his free association right when he terminated Plaintiff's employment "due to his participation in a romantic relationship." (Id. ¶ 52). In his motion to dismiss, Defendant asserts that because the alleged relationship was extramarital, it lacks any constitutional protection. (See Doc. 9 at 3).

As explained in Roberts v. United States Jaycees, 468 U.S. 609 (1984), the Supreme Court has recognized two different forms of association protected by the U.S. Constitution—"expressive association" and "intimate association":

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

7

> . . . [T]he nature and degree of constitutional protection afforded freedom of association may vary depending on the extent to which one or the other aspect of the constitutionally protected liberty interest is at stake in a given case.

Id. at 617-18. It is unclear what type of freedom of association claim Plaintiff is attempting to bring in this count.

In parts of Count I, Plaintiff seems to be asserting a violation of his right of assembly, free speech, or expressive association. (See, e.g., Am. Compl. ¶ 48 (referring to whom Plaintiff "may freely associate and assemble with"); id. ¶ 49 (asserting that "participation in private group text message conversations on his personal cellular phone constitutes association protected by the First Amendment")). In other parts, however, Plaintiff seems to be asserting a violation of his right of intimate association. (See id. ¶ 52 (asserting that Defendant terminated Plaintiff's employment "due to his participation in a romantic relationship")). Plaintiff also might be asserting a violation of his right to privacy or a combination of one or more of these rights.

Because the Court cannot discern whether Plaintiff is alleging violation of free speech rights, assembly rights, expressive association rights, intimate association rights, privacy rights, or some other constitutional right, repleading of this count is necessary so that the proper analytical framework can be applied to Plaintiff's claims. The Court makes no ruling at this time regarding the arguments raised in Defendant's motion to dismiss as to this claim.

### C.  Count II—Procedural Due Process

In Count II of the Amended Complaint, Plaintiff alleges that his right to procedural due process under the Fourteenth Amendment of the U.S. Constitution was violated because the Seminole County Sheriff's Office's Civil Service Board, "which was the final

decision-maker in [Plaintiff's] Appeal Termination Hearing," was not a fair and impartial final decision-maker. (Am. Compl. ¶¶ 56-57). Plaintiff alleges that the Board was not fair and impartial because, except for its Chair, it was comprised of current employees of Defendant. (Id. ¶ 57). He further alleges that one of the Board members "acknowledged after [Plaintiff's] Appeal Termination Hearing that his current employment with [Defendant] influenced his decision to uphold [Plaintiff's] termination." (Id. ¶ 58). Defendant argues that this count should be dismissed because Plaintiff failed to allege that adequate state remedies were unavailable. Defendant's argument has merit.

"[A] procedural due process violation is not complete 'unless and until the State fails to provide due process.'" McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (quoting Zinermon v. Burch, 494 U.S. 113, 123 (1990)). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." Id.

Here, Plaintiff alleges that he was denied procedural due process because the Board was not impartial. However, as in McKinney, "even if [he] suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." Id. at 1563 (emphasis in original). This "is not an exhaustion requirement" but "[i]nstead . . . is a recognition that procedural due process violations do not even exist unless no adequate state remedies are available." Cotton v. Jackson, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000).

Plaintiff's only response to Defendant's argument is that he has alleged "that he has

satisfied all conditions precedent to filing this action including satisfying his obligation to exhaust all his administrative remedies through his public employer." (Doc. 17 at 11). However, as noted above, it is not an exhaustion requirement that is at issue here. Plaintiff has "alleged no facts that indicate that [his] procedural due process grievances cannot be remedied by state court review," and "[i]n this circuit, state-court review of employment termination decisions qualifies as an adequate post-deprivation remedy." Autery v. Davis, 355 F. App'x 253, 255 (11th Cir. 2009); see also McKinney, 20 F.3d at 1563 (rejecting assertion that Florida's process is inadequate and noting the power of Florida courts to review employment termination cases). Because the Amended Complaint does not allege that a state law remedy is unavailable or any facts supporting such an allegation, Count II fails to state a cause of action.[7]

Plaintiff's procedural due process claim suffers from other shortcomings as well. "'A § 1983 action alleging a procedural due process clause violation [consists of] three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process.'" Doe v. Florida Bar, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). The argument raised by Defendant and addressed above relates to the constitutionally inadequate process element, and the state action element appears to be sufficiently alleged. However, in Count II Plaintiff has not asserted whether he is claiming deprivation

---

[7] Defendant also argues in the motion to dismiss that Plaintiff has failed to allege a colorable due process violation because he has only alleged that the Board members were employed by Defendant rather than alleging actual bias. (See Doc. 9 at 5-6). Defendant does not mention Plaintiff's additional allegation that one Board member indicated that his employment affected his decision to uphold Plaintiff's termination. (See Am. Compl. ¶ 58). Because this claim is insufficiently pleaded for other reasons, the issue of the sufficiency of Plaintiff's allegations of bias need not be reached at this time.

of a liberty interest or a property interest, nor has he identified a constitutionally-protected interest of either type.

Plaintiff alleges that "as a United States citizen [he] is afforded a constitutionally protected right of Procedural Due Process," (Am. Compl. ¶ 55), and that under the Fourteenth Amendment he "must be afforded the resolution of all claims against him by a fair and impartial final decision-maker," (id. ¶ 56). However, Plaintiff overstates his procedural due process rights in Count II. As explained in Doe, he must allege a protected liberty or property interest in order to have a potentially actionable procedural due process claim. Plaintiff seems to be claiming a property interest in his employment,[8] but he has not done so, nor can the Court determine whether he is also claiming deprivation of a liberty interest. These deficiencies should be corrected on repleading.

D.    Count III—"Deprivation of Property Interest in Public Employment"

In Count III, Plaintiff alleges that "[a]s a public employee" he "had a genuine property interest in his position based on a legitimate expectation of continued employment" and that Defendant's "decision to terminate [him] was willful, wanton and outrageous, and without regard for the rights or feelings and resulted in deprivation of [Plaintiff's] property interest." (Am. Compl. ¶¶ 62 & 65). Plaintiff does not specify in the Amended Complaint whether this claim arises under state or federal law, nor does he indicate whether this is a constitutional, common law, or statutory claim.

In the motion to dismiss, Defendant characterizes this claim as a federal substantive due process claim and argues that such a claim is not viable. (See Doc. 9 at 6). In his

---

[8] As noted in the discussion of Count III infra, Plaintiff asserts in Count III that he had a property interest in public employment. He has not included any such allegation in Count II.

11

Response, Plaintiff insists that Count III is "a state law claim," (Doc. 17 at 8), and that it "does not allege a substantive due process claim," (id. at 11). Plaintiff then cites cases regarding property interests and liberty interests warranting due process protection—procedural due process cases. (See id. at 12).

Count III does not state a cause of action. It alleges that Plaintiff was deprived of a property interest in public employment. It appears to the Court that Plaintiff is attempting in this count to explain the state-created property interest upon which he bases his Fourteenth Amendment procedural due process claim in Count II. But, merely asserting the deprivation of a property interest does not state a claim on its own. And to the extent Plaintiff is attempting to set forth a claim under state law in this count (as he maintains in his response to the motion to dismiss) Count III fails to state a cause of action that this Court can discern.

> E. **Count IV—Violation of Law Enforcement Officers' and Correctional Officers' [Bill of] Rights**

In his fourth and final claim, Plaintiff alleges that Defendant violated Florida's Law Enforcement Officers' and Correctional Officers' Bill of Rights (hereinafter "Bill of Rights"). Specifically, Plaintiff contends that Defendant: (1) violated section 112.532(1)(g), Florida Statutes, by failing to record the interrogation of him on an audiotape and by failing to produce and furnish a copy of a transcript of the interrogation; and (2) violated section 112.532(1)(i), Florida Statutes, by refusing to allow Plaintiff to have his counsel present at the interrogation on April 11, 2014. (Am. Compl. ¶¶ 69-71).[9] Plaintiff seeks injunctive relief on this claim. (Id. at 13).

---

[9] The Amended Complaint cites (and purports to quote) section 112.536 rather than section 112.532. (See Am. Compl. ¶¶ 68-73). However, it is apparent from the quoted portions that Plaintiff intended to cite section 112.532. Section 112.536 does not exist.

In moving to dismiss this count, Defendant argues that the Bill of Rights does not provide for a civil remedy and instead provides only for a compliance review hearing. In his Response, Plaintiff asserts that "the courts of the State of Florida[] have determined the exclusive remedy for violation of Section 112.532, Florida Statutes is to seek injunctive relief" and that he has properly brought a claim for injunctive relief here. (Doc. 17 at 13). Plaintiff cites Florida state court cases dating from 1982 to 1994. (See id.).

Both parties rely on section 112.534, Florida Statutes, and cases interpreting it. Prior to 2009, section 112.534(1) provided:

> If any law enforcement agency . . . fails to comply with the requirements of this part, a law enforcement officer . . . employed by or appointed to such agency who is personally injured by such failure to comply may apply directly to the circuit court of the county wherein such agency is headquartered and permanently resides for an injunction to restrain and enjoin such violation of the provisions of this part and to compel the performance of the duties imposed by this part.

§ 112.534(1), Fla. Stat. (1993). This is the version of the statute relied upon in the cases cited by Plaintiff. See, e.g., McRae v. Douglas, 644 So. 2d 1368, 1375 n.6 (Fla. 5th DCA 1994). In 2009, however, this section was amended,[10] and it now lists the procedures that apply when a law enforcement agency does not comply with the requirements of the Bill of Rights. See § 112.534(1), Fla. Stat. (2009). It no longer provides for application to a state circuit court for injunctive relief, and the cases cited by Plaintiff for the proposition that injunctive relief is the exclusive remedy do not pertain to the statute as amended.

Plaintiff has not identified a viable remedy that can be obtained from this Court for a violation of the Bill of Rights, nor has he articulated a basis for this cause of action. Count

---

[10] Laws 2009, c. 2009-200, § 3, eff. July 1, 2009. The statute was amended again in 2011 but only to remove a gender-specific reference. Laws 2011, c. 2011-4, § 5, eff. July 6, 2011.

13

IV fails to state a claim for which relief can be granted.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. 9) is **GRANTED**.

2. The Amended Complaint (Doc. 7) is **DISMISSED without prejudice**.

3. Plaintiff may file a Second Amended Complaint **on or before Friday, September 4, 2015**.

**DONE** and **ORDERED** in Orlando, Florida, on August 17, 2015.

                                         JOHN ANTOON II
                                         United States District Judge

Copies furnished to:
Counsel of Record