UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH FETCHICK, III,
          Plaintiff,

v.                              Case No: 6:15-cv-96-Orl-28TBS

DONALD F. ESLINGER, as Sheriff of
Seminole County, Florida,
          Defendant.

## ORDER

    In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff Joseph Fetchick, III, alleges that his rights under the U.S. Constitution to freedom of intimate association and procedural due process were violated when Defendant Donald F. Eslinger, the Sheriff of Seminole County, Florida, terminated his employment as a deputy sheriff.   Defendant moves to dismiss both of these claims under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's Second Amended Complaint (Doc. 29) fails to state a claim for which relief can be granted.   (Mot. Dismiss, Doc. 30).   Plaintiff filed a Response in Opposition (Doc. 35) to the motion, and with the Court's permission Defendant filed a Reply (Doc. 38). As set forth below, Defendant's motion is granted in part and denied in part.

## I.    Legal Standards

    "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## II.   Factual and Procedural Background

Defendant hired Plaintiff in May 2008 as a deputy sheriff, and Plaintiff was assigned to work as a school resource deputy at a middle school. (Second Am. Compl. ¶¶ 10–11). In May 2013, Plaintiff separated from his wife. (Id. ¶ 14). Four months later, in September 2013, Plaintiff "developed a consensual intimate association with Valencia LaRue," whom he describes as "a Sergeant, previously employed with Defendant."[1] (Id. ¶ 16). Plaintiff communicated with LaRue via text messages using his private cellular telephone, and "he refrained [from] sending non-work related communications with his work-assigned cellular telephone." (Id. ¶ 17).

Without Plaintiff's consent, Plaintiff's wife intercepted Plaintiff's text messages with LaRue, and in December 2013 Plaintiff's wife filed a complaint with Defendant's Professional Standards Division, alleging that Plaintiff and LaRue "were having an extramarital romantic affair." (Id. ¶¶ 18–20). Plaintiff's wife "produced to . . . [the] Professional Standards Division[] her personal Apple iPad containing the" intercepted text messages. (Id. ¶ 22). On December 6, 2013, Defendant "commenced an internal affairs

---

[1] The Second Amended Complaint does not state the dates of LaRue's employment with Defendant, but it later alludes to her as a "co-worker" of Plaintiff, which suggests that LaRue was employed by Defendant during the timeframe described in the Second Amended Complaint. (Second Am. Compl. ¶ 25).

2

investigation regarding the personal relationship between Plaintiff" and LaRue. (Id. ¶ 23). Plaintiff was suspended with pay pending the outcome of the investigation. (Id. ¶ 24). Defendant alleged in the Internal Affairs Report that the electronic communications between Plaintiff and LaRue constituted a violation of Defendant's General Orders, though "[t]here was no explicit policy articulated which prohibited a consensual intimate association between co-workers." (Id. ¶ 25). Defendant also "falsely alleged" in the report that Plaintiff "left his assigned [middle school] post multiple times to visit . . . LaRue for sexual relations." (Id. ¶ 27).

On March 24, 2014, Defendant furnished Plaintiff with a Notice of Proposed Discipline, proposing termination. (Id. ¶ 30). During a meeting with Defendant on April 11, 2014, Plaintiff "was interrogated regarding his employment." (Id. ¶¶ 33–35). On April 18, 2014, Defendant "furnished Plaintiff . . . with his Notice of Final Discipline terminating" Plaintiff. (Id. ¶ 36). On April 21, 2014, Plaintiff requested an appeal of the termination decision to Defendant's Civil Service Board pursuant to the Seminole County Sheriff's Office Service Laws. (Id. ¶ 38). An appeal hearing was held, and the Civil Service Board upheld Defendant's decision to terminate Plaintiff. (Id. ¶ 43).

Plaintiff filed this case on January 23, 2015, (Compl., Doc. 1), and a week later filed an Amended Complaint (Doc. 7) alleging four claims: violation of his right to freedom of association; violation of procedural due process; "deprivation of property interest in public employment"; and violation of Florida's law enforcement officers' and correctional officers' bill of rights. After Defendant filed a motion to dismiss (Doc. 9), the Court dismissed the Amended Complaint without prejudice and allowed Plaintiff to file a second amended complaint. (Order, Doc. 25).

In the Second Amended Complaint (Doc. 29), Plaintiff alleges only two claims: violation of the right to freedom of intimate association (Count I), and violation of procedural due process (Count II).   Defendant now seeks dismissal of both of these claims with prejudice.[2]

III.   Discussion

A.   **Count I—Freedom of Intimate Association**

In his first claim, Plaintiff alleges that Defendant "terminated him for engaging in an intimate association with a co-worker." (Second Am. Compl. ¶ 51).   In moving to dismiss this count, Defendant asserts that "Plaintiff's extramarital romantic relationship lacks any constitutional protection."   (Doc. 30 at 2).   However, the issue of whether Plaintiff's relationship with LaRue enjoys constitutional protection as an intimate association cannot be resolved at this stage of the case.

The Supreme Court has recognized a right of intimate association that "receives protection as a fundamental element of personal liberty."   Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984).[3]   In explaining this right, the Roberts court stated:

> The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and

---

[2] The Complaint does not specify whether Defendant is sued in his individual capacity or his official capacity.   No argument for qualified immunity—which could only apply if he were sued in his individual capacity—is presented in Defendant's motion to dismiss.

[3] In Roberts, the Supreme Court also noted another type of protected association— "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." 468 U.S. at 618. "The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." Id.

In ruling on Defendant's prior motion to dismiss, this Court noted that it was unclear what type of association right Plaintiff based his claim on in this case. (Order, Doc. 25, at 7–8). In the Second Amended Complaint, Plaintiff clarifies that his claim is based on the right to freedom of intimate association rather than the right to freedom of expressive association.

> preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. Without precisely identifying every consideration that may underlie this type of constitutional protection, we have noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State. Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty.

Id. at 618–19 (citations omitted).

The Roberts Court further explained that "personal affiliations that exemplify these considerations . . . are those that attend the creation and sustenance of a family." Id. at 619. Family relationships "involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Id. at 619–20. These relationships "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Id. at 620. At the opposite end of the spectrum are associations "such as . . . large business enterprise[s]." Id.

"Between these poles . . . lies a broad range of human relationships that may make greater or lesser claims to constitutional protection from particular incursions by the State." Id. "Determining the limits of state authority over an individual's freedom to enter into a particular association therefore unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." Id. The Roberts Court did not "mark the potentially significant points on this terrain with any precision" but "note[d] only that factors

that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." Id.

The Supreme Court has "not held that constitutional protection is restricted to relationships among family members." Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987). In a case decided a month before Roberts, the Eleventh Circuit held that "[a] state violates the fourteenth amendment when it seeks to interfere with the social relationship of two people" and that "dating is a type of association which must be protected by the first amendment's freedom of association." Wilson v. Taylor, 733 F.2d 1539, 1544 (11th Cir. 1984), abrogated on other grounds as noted in Scala v. City of Winter Park, 116 F.3d 1396, 1402 (11th Cir. 1997); see also, e.g., Anderson v. City of LaVergne, 371 F.3d 879, 882 (6th Cir. 2004) ("[C]ourts have recognized both personal friendships and non-marital romantic relationships as the types of 'highly personal relationships' within the ambit of intimate associations contemplated by Roberts."); Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216 (9th Cir. 2012) (finding that a roommate relationship was a protected intimate association).

In his motion to dismiss, Defendant acknowledges that "[a] dating relationship may be afforded protection if a plaintiff can demonstrate that the relationship closely enough resembles a family relationship." (Doc. 30 at 3). Defendant then argues that Plaintiff's relationship with LaRue "did not resemble a familial relationship," relying primarily on the fact that it was "extramarital." (Id. at 3–4). However, whether the relationship between Plaintiff and Ms. LaRue is a relationship to which constitutional protection attaches depends on a multitude of factors and presents questions of fact that cannot be resolved on a Rule 12(b)(6) motion to dismiss. Cf. Roberts, 468 U.S. at 620 (noting that analysis of

6

this issue "unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments").  Absent binding authority holding that the "extramarital" nature of the relationship categorically excludes it from protection,[4] Plaintiff's intimate association claim survives at this stage of the case.  See, e.g., Angelilli v. Borough of Conshohocken, No. Civ. A. 96-3391, 1996 WL 663871, at *2, *4 (E.D. Pa. Nov. 15, 1996) (denying Rule 12(b)(6) motion pending development of "a factual record about the relationship" over defendant's argument that the relationship could not, "as a matter of law . . . rise to the level of a protected intimate association").  Accordingly, Defendant's motion to dismiss must be denied as to Count I of the Second Amended Complaint.

**B.    Count II—Procedural Due Process**

In the second claim of the Second Amended Complaint, Plaintiff alleges that Defendant violated his due process rights "by failing to provide him notice of the alleged prohibited activity and corresponding punishment prior to his termination."  (Second Am. Compl. ¶ 59).  Plaintiff alleges that he "had no notice that he was prohibited from engaging

---

[4] In Starling v. Bd. of Cty. Comm'rs, 602 F.3d 1257, 1261 (11th Cir. 2010), the Eleventh Circuit—affirming a grant of summary judgment—declined to "address whether the First Amendment protects intimate, extramarital association" and concluded that even assuming that such a right is fundamental, the county's interest outweighed the right in that case.  And, on at least two occasions, the United States Supreme Court has, over the dissents of some justices, denied certiorari in cases involving the issue.  See City of North Muskegon v. Briggs, 473 U.S. 909, 910 (1985) (White, J., dissenting) (noting "disagreement over whether extramarital sexual activity, including allegedly unlawful adulterous activity, is constitutionally protected in a way that forbids public employers to discipline employees who engage in such activity" and that "[t]his case presents an important issue of constitutional law regarding the contours of the right of privacy afforded individuals for sexual matters"); Hollenbaugh v. Carnegie Free Library, 439 U.S. 1052, 1052 (1978) (Marshall, J., dissenting) ("The Court today lets stand a decision that upholds, after the most minimal scrutiny, an unwarranted governmental intrusion into the privacy of public employees. . . . I would grant certiorari and set the case for argument.").

in a consensual intimate association with a co-worker" and did not "know he could be terminated for engaging in a consensual intimate association with a co-worker." (Id. ¶ 57). However, Defendant correctly argues that Plaintiff has failed to plead a viable procedural due process claim, and Count II will be dismissed.

A due process claim has three elements: "'deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process.'" Doe v. Florida Bar, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). Here, Plaintiff has adequately alleged state action, but he has not sufficiently pleaded either of the other two elements.

First, Plaintiff has not identified the liberty or property interest at issue here. The Court noted in its prior Order (Doc. 25) that in the procedural due process claim of the Amended Complaint (Doc. 7) Plaintiff failed to identify whether he was claiming deprivation of a liberty interest or a property interest, (Doc. 25 at 10–11). The Court also noted that in a different count, Plaintiff seemed to be attempting to claim that he had a state-created property interest in public employment. (Id. at 12). Nevertheless, Plaintiff has wholly failed to allege in the Second Amended Complaint what type of interest he was allegedly deprived of by Defendant.[5]

Moreover, even if Plaintiff had sufficiently alleged a constitutionally-protected liberty or property interest, he has failed to allege constitutionally inadequate process. The only

---

[5] In his response to the motion to dismiss, Plaintiff argues that he has a property interest in his employment as a deputy sheriff. (Doc. 35 at 9). However, he does not identify the source of such a right, even in the face of authority to the contrary cited by Defendant. Despite several opportunities to set forth a constitutionally protected property interest, Plaintiff has not done so. The Court makes no ruling on whether he indeed had such a protected interest.

basis alleged in Count II for a deprivation of due process is a lack of notice. However, the Second Amended Complaint alleges that Plaintiff was told of the allegations against him and was questioned about them and given an opportunity to respond before he was terminated. He also was provided with an appeal termination hearing.[6]

Additionally, as noted in the Order on Defendant's first motion to dismiss, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (quoting Zinermon v. Burch, 494 U.S. 113, 123 (1990)). "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." Id. "[E]ven if [Plaintiff] suffered a procedural *deprivation* [in connection with his termination], he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." Id. at 1563 (emphasis in original).

Here, Plaintiff does not allege in Count II that the process he was given to remedy any procedural deprivation was insufficient or that no adequate state remedies were available. See Cotton v. Jackson, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000) ("[P]rocedural due process violations do not even exist unless no adequate state remedies are

---

[6] In Count II of his Amended Complaint, Plaintiff alleged that he was not afforded "a fair and impartial final decision-maker." (Doc. 7 at 9). He does not make such allegations in Count II of the Second Amended Complaint. Again, the only constitutional infirmity alleged in Count II of the Second Amended Complaint is a lack of notice. See Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (noting that the plaintiff "and his attorney were obligated to set forth the specific grounds supporting the procedural due process claim in order to give the defendants fair notice of the nature of the claim" and that "the district court did not err in limiting its consideration of the procedural due process claim to the specific grounds raised in [the plaintiff's] counseled [c]omplaint"). Plaintiff's procedural due process claim fails for other reasons in any event, as noted elsewhere in this Order.

available."); see also Autery v. Davis, 355 F. App'x 253, 255 (11th Cir. 2009) ("In this circuit, state-court review of employment termination decisions qualifies as an adequate post-deprivation remedy."); McKinney, 20 F.3d at 1563 (rejecting assertion that Florida's process is inadequate and noting the power of Florida courts to review employment termination cases).  The case cited by Plaintiff in his response memorandum—Patsy v. Board of Regents of State of Florida, 457 U.S. 496 (1982)—addresses administrative exhaustion and is inapposite.  See Cotton, 216 F.3d at 1331 & n.2 (explaining that the directive that "the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in appropriate fora . . . before being subjected to a" procedural due process claim "is not an exhaustion requirement" (internal quotation omitted)).  Thus, even assuming that there was a lack of notice and that Plaintiff had a protected liberty or property interest, Plaintiff has not sufficiently stated a procedural due process claim.

## IV.    Conclusion

In accordance with the foregoing, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 30) is **GRANTED in part** and **DENIED in part**.  The motion is **GRANTED** as to Count II and is **DENIED** as to Count I.  Count II of the Second Amended Complaint (Doc. 29) is **DISMISSED with prejudice**.

**DONE** and **ORDERED** in Orlando, Florida, on May 25, 2016.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record